IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AIR EVAC EMS INC.                                                    PLAINTIFF

v.                        CASE NO. 4:16-CV-00266 BSM

USABLE MUTUAL INSURANCE CO.,
d/b/a Arkansas Blue Cross and Blue Shield                          DEFENDANT

## ORDER

Defendant USAble Mutual Insurance Company's ("Blue Cross") motion to dismiss

the amended complaint [Doc. No. 26] is granted, and the case is dismissed with prejudice.

## I. BACKGROUND

Plaintiff Air Evac EMS, Inc. ("Air Evac") alleges that Blue Cross is violating federal

and state law by limiting the reimbursements it pays to Air Evac for the services Air Evac

provides to patients insured by Blue Cross. In support of its position, Air Evac pleads as

follows:

Air Evac provides emergency air ambulance services in Arkansas. Am. Compl. ¶¶

2, 8, 19, Doc. No. 18. These services are very expensive due to the costs Air Evac incurs in

providing them. In addition to the millions of dollars spent in purchasing each aircraft, Air

Evac incurs costs for aircraft maintenance, fuel, employees, regulatory compliance, and

medical supplies. *Id.* ¶¶ 12–16. In 2014, it charged $19,250 for a single transport,

exclusive of mileage charges. *Id.* ¶ 17.

Consistent with federal law, Air Evac provides its services without regard to the

patient's ability to pay and without consideration of the patient's choice of insurance

provider. *Id.* ¶ 19. Air Evac incurs debt when it transports patients who cannot afford the service, such as uninsured patients and Medicare and Medicaid patients, because those programs do not reimburse the full cost of the service. *Id.* Air Evac also incurs debt in cases such as this, when it transports patients who have private insurance that reimburse Air Evac for only a fraction of the cost of the service.

Private insurance companies such as Blue Cross typically provide different insurance benefits for "in-network" and "out-of-network" care. By contracting with providers to create an in-network system, Blue Cross negotiates costs for services with the provider, whereby the provider agrees to accept the negotiated cost. *Id.* ¶ 21. By accepting this negotiated cost, the provider often agrees to forgo billing the patient for the difference between the provider's usual charge and the negotiated cost billed to the insurer. This results in a lower bill for the insurance company and for the patient, who incurs no additional charge for the service.

An out-of-network provider has no pre-negotiated arrangement with the insurance company, so a patient using the provider could incur a much higher bill—the provider's usual charge—for the services rendered. Moreover, insurance companies typically reimburse patients at a lower rate for use of out-of-network providers. The result is a much larger bill passed on to patients, which means that patients have a financial incentive to choose in-network providers.

Although Blue Cross pays for air ambulance services, it "does not offer participating contracts to ambulance service providers." *Id.* ¶¶ 20, 22. Consequently, air ambulance providers can only be out-of-network providers. Many of Blue Cross's policies have, at

most, a maximum allowable reimbursement for air ambulance services of $5,000, leaving the patient to pay the remainder of the bill. *Id.* ¶ 24. Using the 2014 base rate, a reimbursement of $5,000 leaves the patient being billed approximately $14,250, which Air Evac often has little success in collecting. The limits on Blue Cross's reimbursement for ambulance services remained in place even as federal law banned annual limits for services and regulated minimum payment for emergency services. *Id.* ¶¶ 44–46.

Air Evac obtains assignments from its patients for the right to appeal coverage decisions, collect compensation, and in some cases, enforce certain rights related to benefit claims or payments due. *See id.* ¶¶ 34–41. Air Evac asserts that Blue Cross's plans do not prohibit these assignments, and at most, merely "purport" to prohibit assignment of benefits. *Id.* ¶ 41. After Blue Cross reimbursed Air Evac pursuant to its subscribers' policy limits, Air Evac often appealed the reimbursement limits without success. Recently, Air Evac has refrained from appealing reimbursement decisions because Blue Cross began "clawing back" reimbursements as the review process unfolded. *Id.* ¶ 43.

Air Evac is challenging Blue Cross's reimbursement practices for services provided after 2010, following the enactment of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010). The ACA prohibits annual limits on "essential health benefits," requires minimum payments for certain emergency services, and demands adequate participating-provider networks for plans offered through state and federal healthcare exchanges. *See* Am. Compl. ¶¶ 30–31, 47–52. Air Evac's amended complaint asserts that Blue Cross's insurance products violate these requirements. Air Evac also asserts

3

that Blue Cross's conduct violates the Employee Income Retirement Security Act ("ERISA"), multiple federal and state insurance regulations, the Arkansas Deceptive Trade Practices Act ("ADTPA"), and Arkansas common law. Blue Cross moves to dismiss.

## II. LEGAL STANDARD

Rule 12(b)(6) permits dismissal when the plaintiff fails to state a claim upon which relief may be granted. To meet the 12(b)(6) standard, a complaint must allege sufficient facts to entitle the plaintiff to the relief sought. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell Atl. Corp. v. Twombly*, 55 U.S. 544 (2007). Although detailed factual allegations are not required, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Iqbal*, 556 U.S. at 663. In ruling on a motion to dismiss, all well plead allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Id.*

## III. DISCUSSION

Blue Cross makes two broad categories of dismissal arguments. First, it argues that each of Air Evac's 11 counts fails to state a claim upon which relief can be granted and that Air Evac lacks standing to bring suit under Count V. Second, it argues that the "filed rate doctrine" independently requires dismissal of all of Air Evac's claims, insofar as they apply to services provided to subscribers in insured plans. The filed rate doctrine is considered only in its application to claims brought under the ADTPA.

Blue Cross's motion to dismiss is granted in its entirety. Counts I and II are considered as part of Count V based on the parties' arguments, and Count V is dismissed

4

because Air Evac lacks standing to sue for equitable relief under ERISA.   Similarly, Counts III and IV are considered as part of Counts VI and VII, and Counts VI and VII are dismissed because Blue Cross's conduct falls within the ADTPA's safe harbor provision.  Counts VIII and IX are dismissed because Air Evac has not alleged the existence of an implied contract between the parties.  Count X is dismissed because Blue Cross has not received anything of value from Air Evac and, therefore, was not unjustly enriched.  Count X is dismissed because all of the foregoing counts have been dismissed.

A.    Counts I, II, and V

### 1. Counts I and II

Based on the parties' arguments, Counts I and II are considered as part of Count V, and any attempt to enforce the ACA independently of ERISA has been abandoned.  Morever, the motion to dismiss Count V is granted because Air Evac lacks standing to sue under ERISA.

Counts I and II seek declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201. Specifically, Count I asserts that Blue Cross violated the ACA by imposing an annual limit for "essential health benefits."  Am. Compl. ¶¶ 58–60; 42 U.S.C. § 300gg–11(a)(1) ("A group health plan and a health insurance issuer offering group or individual health insurance coverage may not establish . . . annual limits on the dollar value of benefits for any participant or beneficiary."); 45 C.F.R. § 147.126.  Count II asserts that Blue Cross violated the ACA by imposing an annual benefit limit for emergency services.  Am. Compl. ¶¶ 61–63; 45 C.F.R. § 147.138; 26 C.F.R. § 54.9815-2719A; 29 C.F.R. §

2590.715-2719A.  The motion to dismiss Counts I and II is granted because the Declaratory

Judgment Act does not create a private cause of action to enforce the applicable provisions

of the ACA, and Air Evac has abandoned these claims by using ERISA to enforce these

provisions.

The Declaratory Judgment Act provides no separate cause of action to enforce federal

statutes.  It provides for an alternative mode of relief when a particular law creates a cause

of action.  *See, e.g.*, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)

(noting that the Declaratory Judgment Act is procedural in nature); *Mylan Pharm., Inc. v.*

*Thompson*, 268 F.3d 1323, 1330–32 (Fed. Cir. 2001). "[T]he Declaratory Judgment Act does

not authorize actions to decide whether federal statutes have been or will be violated when

no private right of action to enforce the statutes has been created by Congress." *Jones v.*

*Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010).  Therefore, unless the ACA and its

regulations create a private cause of action, declaratory relief is unavailable to Air Evac, and

Counts I and II must be dismissed.

Neither the applicable ACA provisions nor its regulations create an explicit private

cause of action.  While Air Evac does not argue that the ACA or its regulations create an

implied cause of action, it argues that sections 502(a)(3) and 715 of ERISA, which form the

basis of Count V, contain an explicit cause of action to enforce the ACA through ERISA.

29 U.S.C. §§ 1132(a)(3), 1185d;  Resp. Br. Opp. Mot. Dismiss at 4, Doc. No. 30.

Air Evac is correct that, under ERISA, participants, beneficiaries, and fiduciaries may

sue to enjoin any action or practice that violates the statute or the terms of the plan.  29

U.S.C. § 1132(a)(3).   Moreover, the relevant provisions of the ACA cited by Air Evac in Counts I and II have been incorporated into ERISA.   29 U.S.C. § 1185d(a)(1)("[T]he provisions of part A of title XXVII of the Public Health Service Act (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart."); *see also King v. Blue Cross and Blue Shield of Illinois*, 871 F.3d 730, 739 (9th Cir. 2017).

By making this argument, however, Air Evac abandons any attempt to enforce the ACA independently of ERISA.   Counts I and II make no reference to ERISA, and both were brought in Air Evac's assignee capacity and "in its own right." Am. Compl. ¶¶ 59, 62.   Now, Counts I and II are essentially recast under Count V, which is an independent claim for violations of the ACA brought through ERISA solely in Air Evac's assignee capacity.   In other words, Air Evac has subordinated Counts I and II to Count V, rather than asserting two separate and distinct claims for violations of the ACA that are independent of Count V's ERISA claim.   Therefore, Counts I and II are simply considered as part of Count V, and they are dismissed with Count V because Air Evac lacks standing to sue under ERISA for equitable relief.

### 2. Count V

Count V, which seeks equitable relief under ERISA, is dismissed because Air Evac lacks standing to sue.   Specifically, Count V seeks an injunction enforcing the ACA's prohibitions on annual limits for essential health benefits and its regulations' minimum

benefits for emergency services and for clarification and reformation of plan terms. The applicable ACA provisions and their accompanying regulations have been incorporated into ERISA. 29 U.S.C. § 1185d(a)(1); *King* 871 F.3d at 739.

ERISA permits a private suit "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Air Evac, however, is neither a "participant" nor a "beneficiary" of Blue Cross's ERISA plans. *See, e.g., id.* §§ 1002(7), (8); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir. 2004) ("Healthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA.") (citations omitted); *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040–41 (8th Cir. 2016) (rejecting providers' assertion that they were "beneficiaries" under ERISA). Instead, Air Evac asserts that it has standing to sue under section 502(a)(3) "as the assignee of participants and beneficiaries of plans governed by ERISA." Am. Compl. ¶¶ 34–41, 71.

Blue Cross argues that Air Evac's assignments are not broad enough to confer a right to sue for equitable relief under ERISA. It asserts that Air Evac's patients have assigned to Air Evac the right to bring claims for benefits under section 502(a)(1)(B), but not the right to bring other claims, including those under section 502(a)(3) for equitable relief, such as enjoining violations of the statute or for reformation of plan terms. Accordingly, Blue Cross argues that Air Evac lacks standing to sue on behalf of its patients.

8

Beneficiaries of ERISA plans may assign their "benefits" and "causes of action arising after the denial of benefits." *Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994); *Grasso Enterprises, LLC*, 809 F.3d at 1041. "Not all ERISA assignments convey the same rights." *Rojas v. CIGNA Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015). Assignment agreements are generally interpreted narrowly, and "the scope of an assignment cannot exceed the terms of the assignment agreement itself." *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 851–52 (11th Cir. 2013). For example, an assignment of the right to sue for benefits under section 502(a)(1)(B) is distinct from an assignment of the right to sue for a breach of fiduciary duties under 502(a)(3), and language conveying one does not necessarily encompass the other. *See, e.g., Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014). Moreover, an assignment of ERISA "benefits" does not necessarily convey a "cause[] of action arising after the denial of benefits." *Lutheran Med. Ctr.*, 25 F.3d at 616.

Air Evac presents six different versions of assignments it received from patients. *See* Am. Compl. ¶¶ 35–40. These assignments only convey "certain rights" to Air Evac. *Id.* ¶ 34. The first version conveys "all rights to . . . payments" received from the insurer "for the services provided to" the patient. *Id.* ¶ 35. It also provides that Air Evac may "appeal payment denials or other adverse decisions . . . without further authorization." *Id.* The second version conveys "all rights to (and related or associated with) . . . payments" of "insurance benefits . . . for any medical services provided to the patient by Supplier now or

in the future." *Id.* ¶ 36. It designates Air Evac as the patient's "'authorized representative'. . . with respect to all aspects of patient's claim (Claim) for benefits." *Id.* The third version conveys "all rights to (and related or associated with) any benefit claims and/or payment due from any third-party payor as reimbursement or payment for the Services, including but not limited to the rights to pursue administrative claims, request documents, receive payment and pursue litigation in order to obtain payment." *Id.* ¶ 37. The fourth and fifth versions are the same as the third version, except that the fourth version omits "request documents" while the fifth version adds back that phrase. *Id.* ¶¶ 38–39. The sixth version conveys "all rights to (and related or associated with)" payment "for any medical services provided to the patient by Supplier now or in the future," including "the right to file appeals, grievances, complaints, litigation, or arbitration relating to a claim for payment, as well as all rights to recover expenses or fees incurred for pursuing the claim and all rights, statutory or contractual, to any additional recovery such as treble damages, punitive damages, or penalties." *Id.* ¶ 40.

Blue Cross is correct that none of these six versions convey a right to sue for injunctive or equitable relief under section 502(a)(3). The first two versions of Air Evac's assignments, which were in effect from 2009 through 2013, are not broad enough to encompass causes of actions arising out of section 502(a)(3). Under *Lutheran Medical Center*, these assignments may not even convey a right to sue under section 502(a)(1)(B), as they merely reference a right to payment and to pursue related administrative appeals if payment is denied. *See* 25 F.3d at 616 (drawing a distinction between an assignment of "benefits" and an assignment of "causes of actions" following a denial of benefits). Indeed,

there is nothing that indicates the assignments convey the patients' rights to bring suit under section 502(a)(1)(B). *Id.* They certainly do not include the right to sue for the less benefits-oriented and more open-ended equitable relief under section 502(a)(3). *See Rojas*, 793 F.3d at 258 ("By expressly assigning only their right to payment, [plaintiff's] patients did not also assign any other claims they may have under ERISA."); *Sanctuary Surgical Ctr., Inc.*, 546 F. App'x at 852.

Similarly, Air Evac's next four versions of assignments, which were in effect from 2013 through 2016, only assign causes of actions arising under section 502(a)(1)(B) and not those arising under section 502(a)(3). The language in these assignments only conveys patients' benefits and rights to bring related litigation in order to *obtain payment*. In *Spinedex*, the Ninth Circuit held that when the focus of an assignment concerned rights to payment for medical services, even a blanket assignment of all of the patient's "rights" did not include the patient's causes of action under section 502(a)(3) for breach of fiduciary duty. 770 F.3d at 1292. Because the assignments focused on litigation to obtain payment, there was simply no indication that by "executing the assignment, patients were assigning to Spinedex rights to bring claims for fiduciary duty." *Id.* Similarly, the assignments here center on conveying benefit payments and pursuing litigation solely to obtain payment. Nothing in these assignments appears to convey the right to sue for clarification or reformation of plan terms, which are extraordinary equitable remedies that extend far beyond litigation for payment on claims. *See N. Cypress Med. Ctr. Operating Co. v. MedSolutions, Inc.*, No. H-10-2609, 2010 WL 4702298, at *1, 3 (S.D. Tex. Nov. 10, 2010); *Eden Surgical*

11

*Ctr. v. B. Braun Med., Inc.*, 420 F. App'x 696, 697 (9th Cir. 2011).

Because Air Evac's assignments do not convey the right to seek equitable remedies, Air Evac lacks standing to sue in an assignee capacity. Counts I, II, and V are dismissed.

B.     Counts III, IV, VI, and VII

*1. Counts III and IV*

Counts III and IV will be considered as part of Counts VI and VII. The motion to dismiss these claims is granted because Blue Cross's conduct falls within the ADTPA's safe harbor provision.

Counts III and IV seek declaratory relief finding that Blue Cross has violated ACA regulations and Arkansas regulations ensuring network adequacy for plans offered on state and federal exchanges and limiting patient responsibility for services from out-of-network providers. Am. Compl. ¶¶ 64–69; 45 C.F.R. § 156.230(a)(2); Ark. Admin. Code R. § 054.00.106-5(C). Like the statutory provisions and regulations at issue in Counts I and II, neither of the regulations cited in Counts III and IV create a private cause of action, and Air Evac cannot simply cite the Declaratory Judgment Act in an attempt to create one. *See* Br. Supp. Mot. Dismiss at 10–19. Air Evac does not seem to argue that the regulations themselves create an explicit or implicit cause of action. *See* Resp. Mot. Dismiss at 5–6, Doc. No. 27. Rather, it argues that it may enforce these regulations under the ADTPA through Counts VI and VII. *Id.* Similar to Counts I, II, and V, Counts III and IV are now subordinate to VI and VII, and any attempt by Air Evac to enforce the ACA or Arkansas Regulation 106 independent of the ADTPA is deemed abandoned.

## 2. Counts VI and VII

Counts VI and VII, which assert that Blue Cross's business practices violate the ADTPA, are dismissed because Blue Cross's conduct falls within the statute's safe harbor provision. The ADTPA makes it unlawful to knowingly make "a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services." Ark. Code Ann. § 4-88-107(a)(1). The statute explicitly creates a private cause of action. *Id.* § 4-88-113(f).

First, in Count VI, Air Evac claims that Blue Cross is misleading its subscribers by informing them they could incur substantial out-of-pocket expenses by using out-of-network providers, except in circumstances involving "Emergency or Imperative Services" provided by out-of-network providers. Am. Compl. ¶ 79. In those cases, the out-of-network services would be subject to in-network benefits. *Id.* Air Evac claims that this creates the false impression that plan members would not suffer the significant expenses associated with out-of-network care in emergency situations because Blue Cross does not disclose that there is no in-network benefit for emergency ambulance service, and the extent of its advertised benefit for that service is possibly subject to an unlawfully low cap. Consequently, subscribers never realize the benefit of the emergency exception, and when they receive a bill for the out-of-network air transport service that potentially saved their lives, Blue Cross's contribution is an illegally capped reimbursement. *Id.* ¶¶ 79–83. Air Evac brings Count VI as the assignee of participants or beneficiaries of plans not governed by ERISA. *Id.* ¶ 76.

Second, in Count VII, Air Evac asserts that Blue Cross's refusal to contract with air

ambulance providers violates federal and Arkansas insurance regulations governing network adequacy and costs. *Id.* ¶¶ 86–94; 45 C.F.R. § 156.230(a)(2); Ark. Code R. § 054.00.106-5(C). Air Evac argues that Blue Cross's failure to disclose to its subscribers that it does not contract with air ambulance providers is a deceptive trade practice. Am. Compl. ¶¶ 86–94. Air Evac brings Count VII on its own behalf. *Id.* ¶ 87.

Blue Cross moves to dismiss for two reasons. First, it argues that Count VI should be dismissed because Air Evac's patients, who have assigned their claims to Air Evac in non-ERISA plans, have not suffered "actual damage or injury." Br. Supp. Mot. Dismiss at 36–37 (citing *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161–62 (Ark. 2005)). This argument, however, is unpersuasive because Air Evac's patients "are now liable for large balance bills," and its "plan members have been damaged in an amount equal to the balance bills for which they are responsible to Air Evac." Am. Compl. ¶¶ 1, 85. This is sufficient to allege a concrete injury-in-fact.

Second, Blue Cross argues that its conduct is within the ADTPA's safe harbor provision. *See DePriest v. AstraZeneca Pharms., L.P.*, 351 S.W.3d 168, 174 (Ark. 2009) (referring to "the so-called 'safe harbor' provision of the ADTPA"). The safe harbor states, in part, that the ADTPA does not apply to "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner[.]" Ark. Code Ann. § 4-88-101(3). The parties dispute the meaning of actions "permitted under laws administered by the Insurance Commissioner."

Blue Cross argues that the ADTPA claim must be dismissed because insurance

transactions are regulated activities, citing the "general activity" rule, which asks whether the entity itself is regulated or, alternatively, whether the conduct or transaction alleged in the complaint is regulated. *See* Doc. No. 39 at 7. Under the general activity rule, if the answer to either of these questions is yes, the conduct or transaction falls within the safe harbor. *Id.* Air Evac, on the other hand, argues for a "specific conduct" rule which exempts only conduct or transactions specifically authorized by law. *Id.* This issue was certified to the Supreme Court of Arkansas, Doc. No. 39, which reformulated the questions presented and held that "Arkansas follows the specific-conduct rule." *Air Evac EMS, Inc. v. USAble Mutual Insurance Company*, 533 S.W.3d 572, 573 (Ark. 2017).

Blue Cross also argues that its conduct falls within the narrowest version of the specific conduct rule. Although it raised this argument in its brief to the Supreme Court, Joint Mot. Lift Stay Ex. A at 1–8, Doc. No. 44, the Court "decline[d] Blue Cross's invitation to hold that the certified questions need not be answered because its conduct satisfies even the narrowest reading of the safe-harbor provision." 533 S.W.3d at 573. Blue Cross's conduct, however, does appear to fall within the specific conduct rule.

The insurance industry in Arkansas is highly regulated. Ark. Code Ann. § 23-60-110. The code regulates, among other things, insurance policies and terms, rates, reimbursement, licensing, and payment processes. *See, e.g.*, *id.* § 23-61-103(c)(5). The insurance commissioner is charged with enforcement of the code and has broad investigatory and regulatory powers. *Id.* § 23-61-103(d)(1), (f)(1)(A), (5)(B)(i)-(vi).

Importantly, the insurance code allows the commissioner to regulate rates and terms

of coverage. The relevant statutory provision states that:

> No basic insurance policy, or annuity contract form, or application form . . . shall be issued, delivered, or used as to a subject of insurance resident, located, or to be performed in this state unless the form has been filed with and approved by the Insurance Commissioner and, in the case of individual accident and health contracts, the rates have been filed with and approved by the [C]ommissioner.

*Id.* § 23-79-109(a)(1)(A)(i). Blue Cross must file its policies and rates with the commissioner, and they must either be explicitly or implicitly approved. Air Evac has not alleged that Blue Cross failed to file the relevant policies and rates with the insurance commissioner or that the commissioner did not or should not have approved them. It appears undisputed that Blue Cross's rates have been either explicitly or implicitly approved by the insurance commissioner. If Blue Cross subsequently deviated from its filed and approved rates, it would violate the insurance code.

For this reason, Blue Cross's conduct falls within the specific conduct rule, as the "actions or transactions at issue have been specifically permitted . . . by a state . . . regulatory body or officer." *Air Evac EMS, Inc.*, 533 S.W.3d at 576. Although the Supreme Court of Arkansas declined to address Blue Cross's argument that its conduct fell under the specific conduct rule, the commissioner "actively or formally allow[ed]" Blue Cross to sell insurance policies with the terms and rates at issue. *See id* at 575. Therefore, it appears that the Court's interpretation of the terms "specifically permit" captures the insurance commissioner's ratification of Blue Cross's plans. Put differently, not only was Blue Cross's conduct generally regulated, but the conduct at issue was specifically authorized by the

16

insurance commissioner. *See DePriest*, 351 S.W.3d at 176–77. This conclusion is supported by the fact that it would now be unlawful for Blue Cross to deviate from these pre-approved rates and terms.

Finally, Air Evac argues that the safe harbor does not apply because the crux of its ADTPA claims are not based on the language in Blue Cross's plans that have been approved by the insurance commissioner. *See* Reply Supp. Mot. Certify at 1–2, Doc. No. 37. Rather, Air Evac contends that Blue Cross's failure to disclose its unlawful refusal to contract with air ambulance providers is what constitutes a deceptive trade practice. This argument is unpersuasive because Air Evac is nonetheless challenging plans that have been filed and approved by the insurance commissioner.

C.  Counts VIII, IX, X, and XI

### 1. Count VIII and IX

Counts VIII and IX, which allege a breach of implied contract and money due on an open account under Arkansas common law, are dismissed because Air Evac has not alleged the existence of an implied contract between the parties. Am. Compl. ¶¶ 95–112.

An open account is "an account based upon running or concurrent dealings between the parties, which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated." *Northwest Arkansas Recovery Inc. v. Davis*, 200 S.W.3d 481, 486 (Ark. Ct. App. 2004)(citation omitted). An essential element of an open account claim is an enforceable contract. *See Stewart Elec. Co. of Sw. Ark., Inc. v. Meyer Sys. Corp.*, 632 S.W.2d 422, 423–24 (Ark. 1982).

17

Contracts, whether express or implied, share the same five elements: (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations. *Berry v. Cherokee Vill. Sewer, Inc.*, 155 S.W.3d 35, 38 (Ark. Ct. App. 2004)(citations omitted). An implied contract is proven "by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties." *Steed v. Busby*, 593 S.W.2d 34, 38 (Ark. 1980).

Three players are involved in all of these insurance transactions: Air Evac, Blue Cross, and Blue Cross subscribers who receive services from Air Evac. Simply because Blue Cross and Air Evac share the same patient-subscriber as a counter-party in their respective contracts does not necessarily mean that Blue Cross has an implied contract with Air Evac. The breach of implied contract and open account claims must be dismissed because Air Evac has failed to allege the existence of an implied contract.

In particular, Air Evac has not adequately pleaded the existence of mutual agreement between the parties. Accordingly, there is no implied contract. Although Air Evac argues that its prolonged course of dealing with Blue Cross shows an implied agreement between the parties that Blue Cross will pay Air Evac to supply emergency air ambulatory for Blue Cross subscribers, the complaint suggests precisely the opposite. Air Evac repeatedly alleges that Blue Cross "refuses to offer contracts to providers of emergency air ambulance transportation." Am. Compl. ¶ 48; *see also id.* ¶ 23 (Blue Cross "refuses to offer contracts to . . . providers" of air ambulance services); *id.* ¶ 65 (Blue Cross "believes that it does not need to offer contracts to providers of air ambulance services"). Further, the amended

complaint says multiple times that Blue Cross was "aware of the rates charged by [Air Evac]," but nonetheless "refused to pay" them. *Id.* ¶¶ 24, 26. Indeed, Air Evac often abandons administrative appeals after Blue Cross denies payment because they "would be futile." *Id.* ¶¶ 32–33. Although Air Evac may wish to contract with Blue Cross, Blue Cross appears to have repeatedly rejected Air Evac's overtures.

Moreover, Blue Cross will not reimburse Air Evac for any more than what is allowed by the subscriber's plan, even when Air Evac has billed a much higher rate for its services. This belies Air Evac's assertion that an implied contract exists between the parties but is merely silent as to the price term. Finally, the weight of the authority cuts against finding implied contracts between insurers and healthcare providers, even if the parties had a prior course of dealing. *See, e.g.*, *Peacock Med. Lab, LLC v. UnitedHealth Group Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015); *Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, No. CIV. 11-2775, 2012 WL 762498, at *10 (D.N.J. Mar. 6, 2012); *Ctr. for Special Procedures v. Connecticut Gen. Life Ins. Co.*, No. CIV.A. 09-6566, 2010 WL 5068164, at *6 (D.N.J. Dec. 6, 2010).

Even supposing that the parties had a meeting of the minds satisfying the mutual agreement element, it could only be for the amount that the subscriber's plans offered in coverage. As discussed above, it is clear from Air Evac's allegations that Blue Cross refuses to pay more than the $5,000 limit. As alleged, these facts would not support a finding that the parties had an implied contract for the billed charges or anything in excess of the out-of-network rate. *See Cmty. Hosp. of Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp.

3d 1042, 1049 (N.D. Cal. 2015) ("[I]t would have been unreasonable for [the provider] to expect that [the insurer's] authorization constituted a promise to pay 100 percent of billed charges. No reasonable jury could find otherwise.") (citations omitted).

For these reasons, the Counts VIII and IX are dismissed because Air Evac has failed to allege the existence of an implied contract.

### 2. Count X

Count X, which is a claim for unjust enrichment, is dismissed because Blue Cross has not received anything of value from Air Evac. Am. Compl. ¶¶ 113–120.

In support of this claim, Air Evac asserts that Blue Cross includes benefits for emergency air ambulance services in its plans, as required by federal law, and receives premiums from subscribers for these benefits. *Id.* ¶ 118. Blue Cross "has received a windfall" by retaining these premiums while insufficiently reimbursing Air Evac for services rendered to Blue Cross subscribers. *Id.*

"To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore." *El Paso Prod. Co. v. Blanchard*, 269 S.W.3d 362, 372 (Ark. 2007) (citation omitted). Put differently, "an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Campbell v. Asbury Auto. Inc.*, 381 S.W.3d 21, 36 (Ark. 2011). "[T]he focus of unjust enrichment is based on what the enriched person received rather than what the opposing party lost." *Butler & Cook, Inc. v. Centerpoint Energy Gas Transmission Co.*, No.

2:12-2107, 2012 WL 4195906, at *12–13 (W.D. Ark. Sept. 18, 2012) (citations omitted).

Blue Cross has not been unjustly enriched because it did not ask for nor receive Air Evac's services, and it paid benefits for which its subscribers bargained. Indeed, a number of courts have found that medical providers cannot bring unjust enrichment claims against insurers because patient-subscribers, and not insurers, are the ones receiving benefits from the provider's services. *See, e.g.*, *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) (finding that a provider "can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services"); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-CV-1121, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) (dismissing provider's unjust enrichment claim because "as matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies"); *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit."); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011).

Air Evac, however, points to other cases finding that providers may bring unjust enrichment claims against insurers. *See, e.g.*, *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, No. 12-cv-114, 2013 WL 1314154, at *4 (E.D. Ky. Mar. 28, 2013).

Almost all of these cases, however, are distinguishable based on the fact that they concern managed care organizations ("MCOs") under Medicaid as opposed to traditional indemnity insurers. Unlike indemnity insurers, MCOs do not cover the cost of healthcare services incurred by members. They are actually responsible for providing healthcare services to members, either directly or through a network of contracted providers. *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 786 (4th Cir. 1995). A provider may look only to an MCO for reimbursement for services rendered to that MCO's members. *See Appalachian Reg'l Healthcare*, 2013 WL 1314154, at *4; *El Paso Healthcare System, LTD v. Molina Healthcare of N.M., Inc.*, 683 F. Supp. 2d 454, 461–62 (W.D. Tex. 2010).

Air Evac's provision of services to Blue Cross subscribers, however, creates an obligation for Blue Cross, as it must pay benefits to the subscriber when she incurs healthcare expenses. This obligation is discharged when Blue Cross pays the amount set forth in the policy. Any remaining amount owed to Air Evac by the subscriber is presumably recoverable from that subscriber.

For these reasons, Air Evac's unjust enrichment claim is dismissed.

### 3. Count XI

In Count XI, Air Evac seeks declaratory relief pursuant to the Declaratory Judgment Act for all of the foregoing counts. Am. Compl. ¶¶ 121–130. Because Counts I–X have been dismissed, Count XI is also dismissed.

### IV. CONCLUSION

For these reasons, Blue Cross's motion to dismiss the amended complaint [Doc. No. 26] is granted, and the case is dismissed with prejudice.

IT IS SO ORDERED this 29th day of May 2018.

_____
UNITED STATES DISTRICT JUDGE